Karen I. Boyd (State Bar No. 189808)
boyd@turnerboyd.com
Keeley I. Vega (State Bar No. 259928)
vega@turnerboyd.com
Vyson Hsu (State Bar No. 322336)
hsu@turnerboyd.com
TURNER BOYD LLP
702 Marshall Street, Suite 640
Redwood City, California 94063
Telephone: (650) 521-5930

*Attorneys for Applicants:*
ALIGN TECHNOLOGY, INC. AND
ALIGN (SICHUAN) MEDICAL EQUIPMENT CO., LTD.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re *Ex Parte* Application of ALIGN TECHNOLOGY, INC. and ALIGN (SICHUAN) MEDICAL EQUIPMENT CO., LTD. for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings | Case No. 4:22-mc-80315<br><br>**ALIGN'S *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN DISCOVERY FROM THE UNIVERSITY OF CALIFORNIA REGENTS FOR USE IN FOREIGN PROCEEDINGS, AND SUPPORTING MEMORANDUM** |

Align Technology, Inc. ("Align Technology") and Align (Sichuan) Medical Equipment Co., Ltd. ("Align Sichuan") (collectively, "Align" or "Applicants") apply to the Court *ex parte* for an order under 28 U.S.C. § 1782 granting Applicants leave to obtain targeted discovery from The University of California Regents ("UC Regents") for use in certain foreign proceedings in China. While this is an *ex parte* application, Applicants are serving these materials on UC Regents concurrently with this filing and provided pre-filing notice of its application to UC Regents and its counsel.[1]

This Application is supported by the memorandum of points and authorities below and the Declarations of Chinese counsel Bo Wu ("Wu Decl.") and United States counsel Keeley Vega ("Vega Decl."). Applicants submit a proposed order and the document subpoena proposed to be served on UC Regents as attached Exhibits 1 and 2, respectively.

---

[1] Until recently, this Court and numerous other federal courts expressly authorized, and routinely accepted, *ex parte* applications for discovery under 28 U.S.C. § 1782, without requiring service of the application on the respondent. *See, e.g., Matter of Action & Prot. Found.*, No. 14-cv-80076 MISC EMC (LB), 2015 WL 1906984, at *6 (N.D. Cal. Apr. 27, 2015) ("An *ex parte* application is an acceptable method for seeking discovery pursuant to § 1782"); *IPCom GmbH & Co. KG v. Apple Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014) ("It is common for parties to file *ex parte* [Section 1782] applications, as parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it.") (internal quotations omitted). However, the Ninth Circuit's recent decision in *CPC Patent Technologies Party Ltd v. Apple, Inc.*, 34 F.4th 801, 808 (9th Cir. May 18, 2022) requires all parties to a Section 1782 action that are assigned to a magistrate judge to consent or decline the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). *See also In re Ex Parte Application of Takafumi Hayashi*, Case No. 22-mc-80228-DMR, Dkt. No. 5 (N.D. Cal. Sept. 6, 2022) ("The court cannot decide the application without the consent of all parties."); *In re 1782 Subpoena Application by Medical Corporation Seishinkai*, Case No. 22-mc-80136-NC, Dkt. No. 4 (N.D. Cal. June 21, 2022). Because miscellaneous civil cases are assigned to magistrate judges in this District, notice to the respondent is required so that the respondent can consent or decline magistrate jurisdiction.

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 1

II. STATEMENT OF FACTS .................................................................................... 1

    1. The Parties ................................................................................................ 1

    2. The Chinese Action .................................................................................. 2

    3. Applicants' Proposed Discovery .............................................................. 3

III. LEGAL ARGUMENT ........................................................................................... 3

    A. Legal Standard .......................................................................................... 3

    B. The Application Satisfies the Requirements of Section 1782 .................. 5

    C. The Supreme Court's Discretionary *Intel* Factors Strongly Favor Granting the Application ........................................................................... 6

        1. First *Intel* Factor: UC Regents Is Not a Participant in the Foreign Proceedings ................................................................................. 6

        2. Second *Intel* Factor: Applicants Seek Highly Relevant Information That Will Assist the BMIPO ............................................... 7

        3. Third *Intel* Factor: No Foreign Discovery Restrictions Bar Applicants' Requested Discovery ............................................................ 9

        4. Fourth *Intel* Factor: Applicants' Discovery Is Narrowly Tailored to Avoid Undue Burden .............................................................. 10

IV. CONCLUSION .................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases** Page(s)

*Akebia Therapeutics, Inc. v. FibroGen, Inc.*,
   793 F.3d 1108 (9th Cir. 2015) ............................................................................................... 6

*In re Accent Delight Int'l*,
   No. 181755-cv 2019 U.S. App. LEXIS 33785 (2d Cir. No. 13, 2019)...................................... 9

*In re Ex parte Application of Am. Petroleum Inst. for Order to Obtain Discovery for Use in*
   *Foreign Proceedings*,
   No. C 11-80008 JF PSG, 2011 WL 10621207 (N.D. Cal. Apr. 7, 2011) ............................ 5, 10

*In re Ex Parte Application of Qualcomm Inc.*,
   162 F. Supp. 3d 1029 (N.D. Cal. 2016) .................................................................................... 5

*In re Ex parte Application of TPK Touch Solutions (Xiamen) Inc.*,
   No. 16-mc-80193-DMR, 2016 WL 6804600 (N.D. Cal. Nov. 17, 2016); ................... 5, 6, 7, 10

*In re Hopkins*,
   No. 20-MC-80012-SVK, 2020 WL 733182 (N.D. Cal. Feb. 13, 2020) .................................... 5

*In re Matter of Application of Oxus Gold PLC*,
   No. MISC.06-82, 2006 WL 2927615 (D.N.J. Oct. 11, 2006)................................................... 6

*In re Med. Corp. Seishinkai*,
   No. 21-MC-80160-SVK, 2021 WL 3514072 (N.D. Cal. Aug. 10, 2021) ................................. 5

*In re Multiflora Int'l Ltd.*,
   No. 20-MC-80193-DMR, 2021 WL 2662122 (N.D. Cal. June 29, 2021).............................. 4, 5

*In re Woori Bank*,
   No. 21-MC-80084-DMR, 2021 WL 2645812 (N.D. Cal. June 28, 2021)................................. 4

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
   No. C-07-5944-SC 2013 WL 183944 (N.D. Cal. Jan. 17, 2013)............................................... 9

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004)........................................................................................................ passim

*IS Prime Ltd. v. Glassdoor, Inc.*,

No. 21-MC-80178-DMR, 2021 WL 5889373 (N.D. Cal. Dec. 13, 2021) ............................ 3, 4

*Med. Inc. Ass'n Smile Create*,

No. 21-MC-80114-SVK, 2021 WL 2877406 (N.D. Cal. July 8, 2021) ..................................... 5

*Palantir Techs., Inc. v. Abramowitz*,

415 F. Supp. 3d 907 (N.D. Cal. 2019) ............................................................................... 4, 8

*Schmitz v. Bernstein Liebhard & Lifshitz*, LLP,

376 F.3d 79 (2d Cir. 2004) ..................................................................................................... 3

**Statutes**

28 U.S.C. § 1782(a) ................................................................................................................. 4, 5, 6

**Rules**

Civil Local Rule 7-10 ..................................................................................................................... i

## I. INTRODUCTION

Pursuant to 28 U.S.C. § 1782 ("Section 1782"), Applicants seek leave to serve narrowly tailored discovery directly relevant to patent infringement claims made against Applicants in proceedings pending in China (the "Chinese Action"). Applicants understand that the information it seeks is available to UC Regents in this District and has not been produced in the Chinese Action. Applicants respectfully submit that the Application should be granted because the information sought is directly relevant to the Chinese Action, and because Applicants have demonstrated that they meet the statutory requirements for issuance of the subpoena. The discretionary factors used by courts when deciding Section 1782 applications also favor granting this Application. For these reasons, Applicants respectfully request that the Court grant Applicants leave to serve the subpoena attached as Exhibit 2.

## II. STATEMENT OF FACTS

### 1. The Parties

Align Technology, Inc. ("Align Technology") is a global medical device company founded in 1997 that invents, makes, and sells industry-leading innovative products that help dental and orthodontic professionals deliver effective, cutting-edge options to their patients. Align is well known for its Invisalign system for correcting tooth alignment using a series of doctor-prescribed, custom manufactured, clear plastic, removable aligners. The Invisalign clear aligners straighten teeth using a series of customized clear trays that can be removed (for eating and teeth cleaning), have no metal brackets or wires to cause irritation, and require significantly less time in the orthodontist's chair than traditional metal braces. Align uses 3D computer modeling software to design a custom treatment plan for each patient based on the patient's current tooth arrangement and desired result. Align Technology is a Delaware corporation, with its principal place of business in Tempe, Arizona. (*See* Wu Decl., ¶ 13.)

Align Technology (Sichuan) Medical Equipment Co., Ltd. ("Align Sichuan") is a Sichuan-based subsidiary of Align Technology. It is a respondent in the Chinese Action in which the discovery sought through this Application will be used. (*See* Wu Decl., ¶¶ 14, 18.)

The University of California Regents ("UC Regents") is a California constitutional

corporation with a principal place of business in Oakland, California. (Vega Decl., ¶ 2 (https://regents.universityofcalifornia.edu/contact/).) It is the governing board of the University of California, a ten-campus public system of higher education, as established in Article IX, section 9 of the California State Constitution. University of California, Los Angeles ("UCLA") is one of the ten campuses that make up the University of California System. According to the website of UCLA's Technology Development Group, "[a]ll inventions and discoveries conceived or developed at UCLA are assigned to the University of California Regents via the University of California's Patent Policy and Patent Acknowledgement ("Patent Acknowledgement"), which is signed by employees upon commencement of employment with UCLA." (Vega Decl., ¶ 3.) UC Regents is named as the assignee in the Application Data Sheet of U.S. Patent Application No. 13/702,578, which is in the same patent family as the patent asserted against Align Sichuan in the Chinese Action. (Wu Decl., ¶¶ 20-22, 27; Ex. D.)

### 2. The Chinese Action

On November 1, 2022, Shanghai Youhui Investment Consulting Co., Ltd. ("Shanghai Youhui") initiated an administrative patent infringement case before the Beijing Municipal Intellectual Property Office ("BMIPO").[2] Shanghai Youhui alleges that respondents Align Sichuan, Beijing Rytime Dental Hospital Branch, and Beijing Rui Cheng Hospital Management Co., Ltd. infringe Chinese patent CN102939056B (Application No. ZL201180028187.0) ("'187 Chinese patent"), through the production, sale, and offering for sale of Align's Invisalign system. (See Wu Decl., ¶ 18.) Align disputes all of the claims.

The asserted '187 Chinese patent is titled "A system of repositioning teeth and its production method" and issued on June 29, 2016. The sole named inventor is B. Chia Soo ("Dr. Soo"). It has an international counterpart (PCT/US2011/038966) and a U.S. counterpart

---

[2] China has a bifurcated system (similar to the German system) in which infringement claims are determined by the courts and validity claims are determined by the CNIPA (Chinese National Intellectual Property Administration). (See Wu Decl., ¶ 12.) In addition to the court system, China also has a parallel administrative patent enforcement system at the local IP bureau where a patent owner or an interested person can file a patent infringement case. These local IP bureaus operate as quasi-judicial tribunals. The BMIPO is the local IP bureau in Beijing that can hear such cases. Administrative patent enforcement cases filed before the BMIPO usually complete within 3-4 months and only injunctions can be issued. (See Wu Decl., ¶ 11.)

1  application (13/702,578) ("'578 U.S. counterpart application"), the latter of which was
2  abandoned. (*See* Wu Decl., ¶ 20.) Upon information and belief, the '187 Chinese patent was
3  purported to be assigned by Dr. Soo to Shanghai Youhui on September 7, 2021. (*See* Wu Decl.,
4  ¶ 21.) On December 6, 2012, Dr. Soo identified The Regents of the University of California as
5  the assignee of the '578 U.S. counterpart application. (*See* Wu Decl., ¶ 22; Ex. D.)

6      According to CNIPA regulations, administrative patent infringement proceedings before
7  the BMIPO should be completed within 3-4 months from the filing date. Thus, a hearing of the
8  Chinese Action is expected to be held around January 1, 2023, and evidence should be submitted
9  before the hearing. A decision in the Chinese Action is expected around March 1, 2023.

          **3. Applicants' Proposed Discovery**

11      Applicants seek leave to serve on UC Regents a subpoena for documents (attached as
12  Exhibit 2) that targets narrow categories of information relevant to the inventorship,
13  development, and ownership of the asserted '187 Chinese patent and related patents and
14  applications. Applicants seek issuance of this discovery here in the United States because the
15  information sought is known, possessed, or controlled directly, indirectly, and/or commonly by
16  UC Regents here, and because it is not available to Applicants through the Chinese Action.

17  **III.   LEGAL ARGUMENT**
18      **A.     Legal Standard**
19      "Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to
20  provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v.*
21  *Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). Over time, Congress has "substantially
22  broadened the scope of assistance federal courts could provide for foreign proceedings." *Id.* at 247-
23  49. The "twin aims" of Section 1782 are "providing efficient means of assistance to participants in
24  international litigation in our federal courts and encouraging foreign countries by example to provide
25  similar means of assistance to our courts." *IS Prime Ltd. v. Glassdoor, Inc.*, No. 21-MC-80178-
26  DMR, 2021 WL 5889373, at *2 (N.D. Cal. Dec. 13, 2021) (quoting *Schmitz v. Bernstein Liebhard &*
27  *Lifshitz*, LLP, 376 F.3d 79, 84 (2d Cir. 2004)). Section 1782 provides in part:
28          The district court of the district in which a person resides or is found
        may order him to give his testimony or statement or to produce a

> document or other thing for use in a proceeding in a foreign or international tribunal. . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a). The statute authorizes a district court to grant a Section 1782 application where: "(1) the discovery sought is from a person residing in the district court to which the application is made; (2) the discovery is for use in a proceeding[3] before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an 'interested person.'" *IS Prime*, 2021 WL 5889373, at *2; *see also In re Woori Bank*, No. 21-MC-80084-DMR, 2021 WL 2645812, at *2 (N.D. Cal. June 28, 2021) (same); *In re Multiflora Int'l Ltd.*, No. 20-MC-80193-DMR, 2021 WL 2662122, at *2 (N.D. Cal. June 29, 2021) (same).

The Supreme Court in *Intel v. Advanced Micro Devices* articulated four non-exhaustive factors to help district courts determine how to exercise their discretion in granting Section 1782 applications, including:

1. whether the "person from whom discovery is sought is a participant in the foreign proceeding";
2. "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance";
3. whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and
4. whether the request is "unduly intrusive or burdensome."

*Intel*, 542 U.S. at 264-65; *see also IS Prime Ltd. v. Glassdoor, Inc.*, 2021 WL 5889373, at *2 (identifying the same factors); *In re Woori Bank*, 2021 WL 2645812, at *2 (same); *In re Multiflora Int'l Ltd.*, 2021 WL 2662122, at *3 (same). The party seeking discovery "need not

---

[3] "To apply for discovery pursuant to Section 1782, a formal proceeding in the foreign jurisdiction need not be currently pending, or even imminent. [*Intel*, 542 U.S.] at 258-59, 124 S.Ct. 2466. Instead, all that is necessary is that a 'dispositive ruling' by the foreign adjudicative body is '"within reasonable contemplation.' *Id.* at 259, 124 S.Ct. 2466 (holding that discovery was proper under Section 1782 even though the applicant's complaint was still only in the investigative stage)." *Palantir Techs., Inc. v. Abramowitz*, 415 F. Supp. 3d 907, 911 (N.D. Cal. 2019)

1  establish that the information sought would be discoverable under the governing law in the
2  foreign proceeding or that United States law would allow discovery in an analogous domestic
3  proceeding." *In re Med. Corp. Seishinkai*, No. 21-MC-80160-SVK, 2021 WL 3514072, at *1
4  (N.D. Cal. Aug. 10, 2021) (citing *Intel*, 542 U.S. at 247, 261-63); *see also Med. Inc. Ass'n Smile
5  Create*, No. 21-MC-80114-SVK, 2021 WL 2877406, at *1 (N.D. Cal. July 8, 2021) (same); *In re
6  Hopkins*, No. 20-MC-80012-SVK, 2020 WL 733182, at *2 (N.D. Cal. Feb. 13, 2020) (same).

7      Applicants have satisfied the statutory requirements in Section 1782, and the
8  discretionary factors articulated in *Intel* support granting the Application.

9      **B.**     **The Application Satisfies the Requirements of Section 1782**

10     Applicants' request for discovery meets all three statutory requirements. <u>First</u>, UC
11 Regents is a California constitutional corporation with a principal place of business in Oakland,
12 California. (Vega Decl., ¶ 2.) UC Regents therefore "resides" and "is found" in this District.
13 *See, e.g., In re Multiflora Int'l Ltd.*, 2021 WL 2662122, at *3 (finding this first factor satisfied by
14 a corporation with headquarters in the Northern District of California because "a business entity
15 is 'found' in the judicial district where it is incorporated or headquartered"); *see also In re Ex
16 Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1036 (N.D. Cal. 2016) (finding
17 subpoenaed parties were "found" within the Northern District for purposes of Section 1782
18 because they maintained "in-district offices")

19     <u>Second</u>, Applicants seek the requested discovery for use in "proceeding[s] before a
20 foreign or international tribunal." 28 U.S.C. § 1782(a). Courts in this District have found that
21 "actions before the People's Courts in China constitute foreign tribunals for purposes of Section
22 1782." *See In re Ex parte Application of TPK Touch Solutions (Xiamen) Inc.*, No. 16-mc-80193-
23 DMR, 2016 WL 6804600, at *2 (N.D. Cal. Nov. 17, 2016); *see also In re Ex parte Application
24 of Am. Petroleum Inst. for Order to Obtain Discovery for Use in Foreign Proceedings*, No. C 11-
25 80008 JF PSG, 2011 WL 10621207, at *2 (N.D. Cal. Apr. 7, 2011) (granting 1782 application
26 seeking discovery for use in six cases involving copyright, trademark, and unfair competition
27 claims pending before Foshan Shunde District People's Court in China). Additionally,
28 proceedings before foreign patent offices, like China's State Intellectual Property Office,

regarding the validity of a patent "also constitute foreign tribunals for purposes of Section 1782." *In re Ex Parte Application of TPK Touch Solutions (Xiamen) Inc.*, No. 16-mc-80193-DMR, 2016 WL 6804600, at *2 (N.D. Cal. Nov. 17, 2016) (citing *Akebia Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d 1108, 1111 (9th Cir. 2015) (finding that proceedings before European and Japanese Patent Offices constitute proceedings before a "foreign or international tribunal" under Section 1782 because due to "quasi-judicial" nature of those proceedings).) Thus, the BMIPO, a quasi-judicial tribunal for patent infringement matters, is a "foreign tribunal" under Section 1782.

<u>Third</u>, as respondent in the Chinese Action and the parent corporation of the respondent, Applicants Align Sichuan and Align Technology qualify as "interested" parties. *See* 28 U.S.C. § 1782(a); *Intel*, 542 U.S. at 256 ("[A]ny interested person is intended to include not only litigants before foreign or international tribunals, but also … any other person … merely possess[ing] a reasonable interest in obtaining the assistance") (internal quotes and notes omitted); *see also In re Matter of Application of Oxus Gold PLC*, No. MISC.06-82, 2006 WL 2927615, at *7 (D.N.J. Oct. 11, 2006) (finding that the applicant was an interested party under Section 1782(a) as the majority parent of a named defendant in the foreign proceedings).

Accordingly, Applicants have satisfied the statutory requirements for an application under 28 U.S.C. § 1782.

    **C.    The Supreme Court's Discretionary *Intel* Factors Strongly Favor Granting the Application**

The discretionary factors identified by the Supreme Court in *Intel* also weigh heavily in favor of granting Applicants' request for discovery.

    **1.    First *Intel* Factor: UC Regents Is Not a Participant in the Foreign Proceedings**

For the first *Intel* factor, the Court asks whether "the person from whom discovery is sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 264. On this factor, the Supreme Court has noted that "when the person from whom discovery is sought is a participant in the foreign proceeding … the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A

foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Id*. "In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id*. Here, UC Regents is not a party to the Chinese Action, and this factor supports granting the application. *See In re Ex Parte Application of TPK Touch Solutions (Xiamen) Inc.*, No. 16-mc-80193-DMR, 2016 WL 6804600, at *3 (N.D. Cal. Nov. 17, 2016) (finding this factor weighs in applicant's favor because subpoenaed party is not a party to the Chinese proceedings).

### 2. Second *Intel* Factor: Applicants Seek Highly Relevant Information That Will Assist the BMIPO

For the second *Intel* factor, the Court "may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. "This factor focuses on whether the foreign tribunal is willing to consider the information sought." *In re Ex Parte Varian Med. Sys.*, 2016 WL 1161568 at *4. Absent authoritative proof that a foreign tribunal would reject evidence obtained with the aid of Section 1782, courts tend to permit discovery. *Id*. (finding the second factor in favor of granting § 1782 discovery because no evidence or case law suggested that the Mannheim District Court would be unreceptive to the discovery sought). The absence of discovery mechanisms within the foreign jurisdiction comparable to those in the United States "does not necessarily signal objection to aid from U.S. Courts." *Illumina*, 2020 WL 820327 at *4 (citing *Intel*, 542 U.S. at 264).

The accompanying Declaration of Bo Wu, a Chinese lawyer with more than thirteen years of professional experience in Chinese patent law and thorough knowledge of the Chinese Action, establishes that the BMIPO will likely be receptive to the evidence sought by this Application. (Wu Decl., ¶¶ 30-33.) While the BMIPO cannot itself order the discovery sought by the Application, it will nevertheless accept the evidence obtained through Section 1782 proceedings in the United States. (*Id*. at ¶ 31.) In line with Chinese law and judicial practice, the parties in dispute should provide evidence to support their claims. (*Id*.) According to *Guidelines*

*for Administrative Adjudication of Patent Infringement Disputes*, the respondent can propose the defense of qualification defect against the claimant upon the standing issue, patent right ownership issue, etc., and submit the corresponding evidence. (*Id*.) Under such circumstances, BMIPO needs to consider and hear the evidence, especially evidence involving the standing of the party, which has a substantial impact on the action. (*Id*.) There is no known reason that the BMIPO would not accept the requested discovery, nor are there any Chinese policies or restrictions that would limit or prohibit seeking the requested discovery. (*Id*. at ¶ 32.) Because the BMIPO would accept the introduction of the requested documents, a United States Court would not offend the BMIPO or violate any Chinese law, rule, or order by ordering such discovery. (*Id*. at ¶ 33.)

This is more than sufficient to justify Section 1782 discovery under the circumstances as there is no authoritative proof that the foreign tribunal would reject evidence obtained with the aid of Section 1782. *See, e.g.*, *Palantir*, 415 F. Supp. at 915 (finding the second *Intel* factor in favor of granting the application where there was no indication the foreign tribunal would be hostile to such discovery); *Illumina*, 2020 WL 820327 at *5 (finding the second *Intel* factor in favor of upholding the subpoenas based on declarations that the foreign courts are receptive and the absence of clear directives from the foreign courts against using § 1782 evidence).

The BMIPO will almost certainly consider the information sought due to its relevance. *See In re Ex Parte Varian Med. Sys.*, 2016 WL 1161568 at *4. Through its subpoena, Applicants seek information regarding the development, inventorship, and ownership of the technology of the asserted patent and related applications from UC Regents. Applicants seek this information because, according to US Patent Office filings, UC Regents is identified as the assignee of the U.S. counterpart application of the asserted '187 Chinese patent. (*See* Wu Decl., ¶ 22; Ex. D.) But the '187 Chinese patent is not assigned to UC Regents. It was purported to be assigned to Shanghai Youhui by named inventor Dr. Soo on September 7, 2021. (*See* Wu Decl., ¶ 21.) Thus, there is reason to question the validity of the assignment to Shanghai Youhui, and whether the '187 Chinese patent is contractually obligated to be assigned to UC Regents. This information is relevant because, under the applicable Chinese law, an administrative patent

infringement proceeding before the BMIPO can only be brought where the claimant is the patentee or a person of interest of the patent. (*See* Wu Decl., ¶ 11.)

Accordingly, Applicants seek discovery from UC Regents that goes directly to issues in the Chinese Action, and that will allow Applicants to better investigate and defend against plaintiff's allegations. The second *Intel* factor therefore strongly favors allowing the Section 1782 discovery that Applicants now seek.

### 3. Third *Intel* Factor: No Foreign Discovery Restrictions Bar Applicants' Requested Discovery

For the third *Intel* factor, the Court considers "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264-65. Although foreign discovery procedures may not be as robust or expansive as those in the United States, a Section 1782 application is not an attempt to circumvent those foreign procedures. "[T]here is a difference between a § 1782(a) request that seeks documents that cannot be obtained ... because the foreign jurisdiction does not provide a mechanism for such discovery, and one that seeks documents that cannot be obtained because the foreign jurisdiction prohibits the discovery of those documents." *Illumina*, 2020 WL 820327, at *5 (citing *In re Accent Delight Int'l*, No. 181755-cv 2019 U.S. App. LEXIS 33785, at *8 (2d Cir. No. 13, 2019). That "more evidence may be obtained via a § 1782 application than via the foreign discovery procedures does not amount to circumvention and does not militate against approval of the application." *Id.* Further, the applicant need not exhaust foreign discovery attempts before seeking a Section 1782 application. *Illumina*, 2020 WL 820327, at *6 ("Additionally, whether or not those jurisdictions allow comparable discovery—which they do not—courts need not determine that an applicant has exhausted its discovery attempts abroad.") (citing *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013)) (internal quotations omitted).

The discovery sought by Applicants is not an effort to circumvent Chinese proof-gathering restrictions or its national policies, but rather constitutes a supplemental method of obtaining relevant documents fully expected to be used in connection with claimant's claims and

Align's defenses in the Chinese Action. (Wu Decl., ¶ 28.) Indeed, courts have granted applications under Section 1782 for evidence to be used in Chinese proceedings. *See, e.g.*, *In re Ex Parte Application of TPK Touch Solutions (Xiamen) Inc.*, No. 16-mc-80193-DMR, 2016 WL 6804600, at *3 (N.D. Cal. Nov. 17, 2016) (granting Section 1782 application, and finding that "there is nothing to suggest that [applicant] is attempting to circumvent foreign proof-gathering restrictions" and noting that "[applicant] asserts that there are no Chinese restrictions or policies that would prohibit seeking discovery of documents requested by the subpoena, and the discovery sought is consistent with the type of discovery available in the Chinese proceedings"); *In re Ex Parte Application of Am. Petroleum Inst.*, No. 19-mc-80272-VKD, 2011 WL 10621207, at *2 (Nov. 13, 2019) (finding third discretionary factor met where applicant represented that "no such restrictions or policies exist[ed] and the requested discovery [wa]s consistent with the type of discovery available in the Chinese proceedings").

In light of the declaration of Mr. Wu, the supporting case law, and the absence of any compelling proof that the BMIPO would reject the discovery that Applicants seek from UC Regents, this factor weighs heavily in Applicants' favor.

### 4. Fourth *Intel* Factor: Applicants' Discovery Is Narrowly Tailored to Avoid Undue Burden

Regarding the fourth *Intel* factor, the *Intel* Court noted that "unduly intrusive or burdensome requests may be rejected or trimmed." *Intel*, 542 U.S. at 265. Applicant's requests are narrowly tailored to seek documents y directly related to issues in the Chinese Action. Applicants seek from UC Regents documents related to the inventorship, development, and ownership of the asserted and related patents and applications. These topics are directly relevant to the issues Chinese Action. Applicants' document requests identify specific documents and materials that UC Regents is believed to possess and should be able to identify, collect, and produce with relatively little effort. These discovery requests are not unduly burdensome. They seek discovery of only information and documents essential to the fair and efficient resolution of the Chinese Action.

Any burden imposed by this discovery is justified under the circumstances and is

outweighed by the need for the information requested so the BMIPO can make a full, fair, and just resolution of the patent infringement dispute. Further, Applicants will commit to working with UC Regents to address any legitimate confidentiality concerns by negotiating a stipulated protective order that will protect materials produced pursuant to this Application. The proposed protective order submitted herewith (Vega Decl., Ex. C) limits use of appropriately designated materials in the United States and China. (Wu Decl., ¶ 29.)

Accordingly, the fourth *Intel* factor supports granting this Application.

### IV. CONCLUSION

Applicants have satisfied the three statutory requirements of 28 U.S.C. § 1782. The *Intel* factors also weigh in favor of granting this Application. Applicants therefore respectfully request that the Court issue the accompanying proposed order, authorizing Applicants to serve UC Regents with a subpoena in substantially the same form as Exhibit 2. In addition, Applicants respectfully request the Court issue the attached proposed protective order to facilitate discovery.

Dated: November 18, 2022

Respectfully submitted,

/s/ Keeley I. Vega

Karen I. Boyd (State Bar No. 189808)
boyd@turnerboyd.com
Keeley I. Vega (State Bar No. 259928)
vega@turnerboyd.com
Vyson Hsu (State Bar No. 322336)
hsu@turnerboyd.com
TURNER BOYD LLP
702 Marshall Street, Suite 640
Redwood City, California 94063
Telephone: (650) 521-5930

*Attorneys for Applicants*
Align Technology, Inc. and Align (Sichuan) Medical Equipment Co., Ltd.